UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSE GARCIA,<br>           Plaintiff,<br>   v.<br>START YOSHI, INC.,<br>           Defendant. | Case No. 23-cv-06518-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 7 |

Plaintiff Jose Garcia sues his former employer, Start Yoshi, Inc. ("Yoshi"), for discrimination and wrongful termination. Mr. Garcia filed his complaint in the Santa Clara County Superior Court, asserting California and common law claims for relief. Yoshi removed the matter here, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 1.

Yoshi now moves to compel arbitration and to dismiss this action, or alternatively, to stay the case pending completion of the arbitration proceedings. Dkt. Nos. 7, 14. Mr. Garcia opposes the motion. Dkt. No. 13. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Yoshi's motion to compel arbitration and stays this action pending the completion of arbitration.[1]

**I.    BACKGROUND**

Yoshi provides automotive services directly to individual and corporate customers. Dkt.

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 5, 10.

No. 7-1 ¶ 2. Mr. Garcia worked for Yoshi as a field technician from August 2017 to August 2022, when his employment was terminated. *See* Dkt. No. 1, Ex. C (First Amended Complaint ¶¶ 1, 8); Dkt. No. 7-1 ¶ 4. He claims that Yoshi unlawfully terminated his employment because he took several days off for jury duty (in violation of California Labor Code § 230), and because he took a day of sick leave (in violation of California Labor Code § 233). Mr. Garcia also claims that his termination violates public policy. He further claims that Yoshi violated California Labor Code § 226 by failing to produce all of his requested employee records. *See* Dkt. No. 1, Ex. C.

Yoshi says that on November 23, 2021, Mr. Garcia executed a Mutual Agreement to Arbitrate ("Agreement"), which provides, in relevant part:

> **Claims Subject to Arbitration**. Except as expressly set forth below, both Yoshi and Employee mutually consent to resolve by final and binding arbitration any and all disputes, claims or controversies of any kind or nature, including but not limited to such matters arising from, related to or in connection with Employee seeking an employment relationship, Employee's employment relationship and/or the termination of Employee's employment relationship with any one or more of Yoshi, its past and present parents, affiliates and/or subsidiaries that either (a) Employee may have against Yoshi (and/or its past and present parents, affiliates, subsidiaries and/or each of their and Yoshi's respective past and present employees, independent contractors, owners, agents, officers, directors, board members, shareholders, successors, assigns, benefit plans and sponsors, fiduciaries, administrators or insurers) or (b) Yoshi (or one of its parents, affiliates or subsidiaries) may have against Employee (collectively, "Claims"). The Claims subject to arbitration include, without limitation, (a) any Claims by Employee arising from, related to or in connection with: (i) any federal, state or local law or regulation prohibiting discrimination, harassment or retaliation based on race, color, religion, national origin, sex, age, disability or any other condition or characteristic protected by law; (ii) any alleged breach of contract or covenant, whether express or implied; (iii) any alleged violation of any federal, state, local, or other constitution, statute, ordinance, regulation, common law, or public policy; (iv) any dispute regarding wages, hours, commissions, bonuses or other compensation or payment; and/or (v) any personal, emotional, physical, economic, property or any other injury, loss or harm; and (b) any Claims that Yoshi (or one of its parent, affiliates or subsidiaries) may have against Employee, including, without limitation, any alleged trade secret violations.

1  Dkt. No. 7-1 ¶ 5 & Ex. A.  Pursuant to that Agreement, Yoshi contends that all of Mr. Garcia's
2  claims are subject to arbitration with JAMS.  *See id*.  Mr. Garcia does not challenge Yoshi's
3  arguments that the Federal Arbitration Act ("FAA") applies, or that the Agreement encompasses
4  all of his claims against the company.  Rather, he contends that the Agreement is invalid and
5  should not be enforced because it is substantively and procedurally unconscionable.  Yoshi
6  maintains that the Agreement is valid and requires arbitration of Mr. Garcia's claims.  Even if any
7  provisions he complains of are found unconscionable, Yoshi argues that the appropriate remedy is
8  to sever any such provisions and enforce the remainder of the Agreement.

## II.     LEGAL STANDARD

The FAA governs written arbitration agreements "evidencing a transaction involving commerce," *see* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001), and requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement, *see* 9 U.S.C. § 3; *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  Under the FAA, a district court must compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of the agreement.  *See Geier v. M-Qube Inc*., 824 F.3d 797, 799 (9th Cir. 2016) (citing *Chiron Corp.*, 207 F.3d at 1130); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4).  As noted above, Mr. Garcia does not dispute that the parties' Agreement encompasses his claims.  Thus, the only issue is whether the Agreement is valid and enforceable.

Arbitration agreements are "a matter of contract" and "may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (citation omitted).  Parties may "agree to limit the issues subject to arbitration" and "to arbitrate according to specific rules." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v.*

1  *Randolph*, 531 U.S. 79, 91 (2000).  In determining the validity or enforceability of an arbitration
2  agreement, courts generally apply ordinary state-law principles that govern the formation of
3  contracts.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[2]

## III.  DISCUSSION

Unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotations and citation omitted).  Procedural and substantive unconscionability "must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.  But they need not be present in the same degree."  *Id.* (quotations and citation omitted).  "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves."  *Id.* (quotations and citation omitted).  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  The "central idea" of the "unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 911 (2015) (quotations and citations omitted).  "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof."  *Id.* (citation omitted).

### A.  Procedural Unconscionability

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power" where oppression "arises from an inequality of bargaining power that results in real negation and an absence of meaningful choice."  *Poublon, v C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quotations omitted).  Mr. Garcia contends that the Agreement is procedurally unconscionable on the grounds that (1) it is an adhesion contract and (2) the

---

[2] Mr. Garcia and Yoshi appear to agree that California law applies.

4

Agreement's provisions regarding discovery are inconsistent with the JAMS Employment Arbitration Rules ("JAMS Rules") that are referenced in the Agreement. Dkt. No. 13 at 4-5. Yoshi maintains that there is nothing in the record substantiating Mr. Garcia's claims of procedural unconscionability.

### 1. Adhesion contract

"The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (quotations and citation omitted) (alteration in original). There are degrees of procedural unconscionability: "At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability." *Balthazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (quotations and citation omitted). "Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Id*. (quotations and citations omitted). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Id*. (quotations and citations omitted). "If the contract is adhesive, the court must then determine whether other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]." *Armendariz*, 24 Cal. 4th at 113 (quotations and citation omitted) (alteration in original). "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Balthazar*, 62 Cal.4th at 1244 (citation omitted); *see also Poublon*, 846 F.3d at 1261 ("In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high.") (quotations and citation omitted).

In the present case, the parties' Agreement is a standard adhesion contract. Yoshi does not dispute that it was in the superior bargaining position with respect to Mr. Garcia. Although

5

nothing in the record indicates that Mr. Garcia was explicitly told that the Agreement was being presented to him as a condition of his employment (*see* Dkt. No. 14-1 ¶ 4), the Dispute Resolution provision of Yoshi's Employee Handbook indicates that arbitration is the sole, mandatory procedure for resolving disputes between Yoshi and its employees. *See* Dkt. No. 13-2 ¶ 5, Ex. A at p. 33 ("Except as prohibited by law, any and all employment disputes . . . shall be submitted to arbitration, in accordance with the mutual agreement to arbitrate entered into between Yoshi and each of its Employees. This procedure shall be the exclusive remedy for claims, and the decision of the arbitrator will be final and binding on Yoshi and the Employee."). At the same time, however, Mr. Garcia does not claim that he was surprised by the Agreement, or that he was "lied to, placed under duress, or otherwise manipulated into signing" it. *Baltazar*, 62 Cal. 4th at 1245 (minimal procedural unconscionability where the arbitration agreement was adhesion contract but no element of surprise or duress). Indeed, the record indicates that Yoshi scheduled appointments with its employees, including Mr. Garcia, to discuss anything in Yoshi's Employee Handbook, including the Agreement. Mr. Garcia does not dispute that his employee file indicates that he did not ask any questions regarding the Agreement, even though he was given the opportunity to do so. *See* Dkt. No. 14-1 ¶¶ 3, 5. The adhesive nature of the Agreement, "without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d 1251 at 1261-62; *see also Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 428 (N.D. Cal. 2018) (minimal procedural unconscionability where employee was presented with standard adhesion contract, but plaintiff claimed no surprise or duress).

### 2. Discovery provision

The parties' Agreement provides that "[e]xcept upon a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side." Dkt. No. 7-1, Ex. A at ECF 6. Additionally, "[u]pon request," and "subject to any condition or limitation imposed by the arbitrator upon a showing of good cause," Mr. Garcia is entitled to "a true copy of his . . . employment records kept in the ordinary course of business (including, without limitation any and all performance evaluations), other than records relating to pre-employment procedures and any reference checks[.]" *Id.*

1    Mr. Garcia makes overlapping arguments regarding procedural and substantive
2    unconscionability based on the Agreement's discovery provision. He argues that the Agreement is
3    procedurally unconscionable because its contains a discovery provision that (1) is different from
4    those in the referenced JAMS Rules and (2) restricts the arbitrator's ability to expand the scope of
5    discovery. Dkt. No. 13 at 5-6, 8. To the extent Mr. Garcia's arguments appear to be the same as
6    his substantive unconscionability arguments that the Agreement imposes "extreme limits on
7    discovery" that unfairly favor Yoshi, the Court addresses those arguments below. To the extent
8    Mr. Garcia suggests that the Agreement is procedurally unconscionable because it contemplates
9    three depositions per side, in addition to "the exchange of relevant documents," whereas the JAMS
10   Rules provide for "at least one deposition," Mr. Garcia fails to persuade. *See* Dkt. No. 7-1, Dkt.
11   No. 13-2 ¶ 4. These provisions are different, but that does not mean the Agreement is
12   unconscionable. Indeed, the amount of discovery contemplated under the parties' Agreement is
13   favorable to Mr. Garcia, compared to the default one deposition under the cited JAMS rule. Apart
14   from the adhesive nature of the Agreement (which the Court has found is minimally
15   unconscionable), Mr. Garcia does not claim any oppression or surprise regarding these discovery
16   provisions. Nor does the Court find any such indicators of procedural unconscionability. Mr.
17   Garcia's reliance on *Murrey v. Superior Ct.*, 87 Cal. App. 5th 1223 (2023)—which concerned an
18   arbitration agreement that failed to disclose the identity of an alternative dispute resolution
19   organization or its rules and "impos[ed] confusing 'presumptions' that favor limiting discovery"—
20   is misplaced. *See Murrey*, 87 Cal. App. 5th at 1232-33, 1240, 1250.
21   Accordingly, the Court concludes that the parties' Agreement is an adhesion contract with
22   minimal procedural unconscionability. The Court next considers whether the parties' Agreement
23   has a high degree of substantive unconscionability. *Poublon*, 846 F.3d at 1260 (internal
24   quotations omitted); *Balthazar*, 62 Cal. 4th at 1244.
25   **B.    Substantive Unconscionability**
26   "Not all one-sided contract provisions are unconscionable[.]" *Sanchez*, 61 Cal. 4th at 911.
27   Substantive unconscionability requires contract terms that are "overly harsh," "unduly
28   oppressive," "unreasonably favorable," or so one-sided that they "shock the conscience."

7

*Poublon*, 846 F.3d at 1261; *Sanchez*, 61 Cal. 4th at 910-911.  These various formulations "all mean the same thing," *Sanchez*, 61 Cal. 4th at 911, and "point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party," *Baltazar*, 62 Cal. 4th at 1244 (quotations and citations omitted).  Mr. Garcia contends that the Agreement is substantively unconscionable on the grounds that (1) the Agreement's terms preclude him from recovering attorneys' fees to which he says he is entitled by statute, (2) the Agreement lacks mutuality, and (3) the Agreement imposes unfair limitations on discovery.  Dkt. No. 13 at 6-8.

### 1. Attorneys' fees

The Agreement's "Arbitration Fees and Costs" clause provides that the "parties shall be responsible for their own attorneys' fees and costs," except that the arbitrator may award either party its reasonable attorneys' fees and costs as a sanction for bad behavior by the other party (e.g., frivolous or harassing conduct, unreasonable delay, failure to cooperate in discovery, or failure to cooperate with confidentiality requirements).  Dkt. No. 7-1, Ex. A at ECF 6.  Mr. Garcia contends that this portion of the Agreement is substantively unconscionable because it precludes him from recovering fees he would be entitled to by statute if he prevails.  *See* Cal. Labor Code § 233(e) ("[A]n employee may bring a civil action for the remedies provided by this section in a court of competent jurisdiction.  If the employee prevails, the court may award reasonable attorney's fees.").  Courts have held that "[a]ttorney's fee provisions are unconscionable when they preclude a plaintiff from recovering attorney's fees that the plaintiff would otherwise be entitled to under statutory law." *Lang*, 347 F. Supp. 3d at 431.  This is not disputed, as Yoshi conceded the issue at oral argument.  Dkt. No. 15.

Thus, to the extent this provision would preclude Mr. Garcia from recovering the attorneys' fees to which he would otherwise be entitled by statute as a prevailing party,[3] the provision is unconscionable.  However, to the extent Mr. Garcia takes issue with the fact that the

---

[3] Elsewhere, the Agreement provides:  "The arbitrator may award any form of remedy or relief (including injunctive relief) that would otherwise be available in court and any such form of remedy or relief awarded must comply with applicable state and federal law."  Dkt. No. 7-1, Ex. A at ECF 6 ("Remedies").

1    provision authorizes the arbitrator to award either party its reasonable fees and costs as a sanction
2    for improper conduct by the other party, the Court finds no unconscionability.  *See Poublon*, 846
3    F.3d at 1268 (provision allowing arbitrator to impose attorneys' fees as a sanction for bad
4    behavior was not substantively unconscionable, as it was not inconsistent with state law).

### 2. Unilateral modification/revocation

The Agreement provides, in relevant part, that it "can be modified or revoked only by a writing signed by an authorized representative of Yoshi that references this Agreement and specifically states an intent to modify or revoke this Agreement."  Dkt. No. 7-1, Ex. A at ECF 7.  Relying on *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), Mr. Garcia argues that this unilateral modification/revocation clause is substantively unconscionable and renders the Agreement illusory.  In *Ingle*, the Ninth Circuit held that a provision of an arbitration agreement "affording [the defendant employer] the unilateral power to terminate or modify the contract is substantively unconscionable." *Ingle*, 328 F.3d at 1179.  Relying primarily on *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 479 (9th Cir. 2024), Yoshi maintains that a unilateral modification provision without more does not render an agreement procedurally unconscionable.  *See* Dkt. No. 14 at 7.  However, Yoshi has not persuasively demonstrated that *Patrick* applies, inasmuch as that case appeared to emphasize that the modification clause in question was separate from the arbitration clause at issue.  *See Patrick*, 93 F.4th at 479.  Here, the unilateral modification/termination provision appears precisely in the Agreement at issue.  At oral argument, Mr. Garcia also argued that Yoshi's other cited authority, *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462 (2013), is inapt insofar as that case concerned a provision for unilateral modification, but not outright termination of a contract.

In light of *Ingle*, and absent any California Supreme Court holding to the contrary, the Court finds that the Agreement's provision giving Yoshi the unilateral right to modify and terminate the Agreement is unconscionable.

### 3. Discovery provision

The Agreement's "Discovery and Motions" clause provides:

> **Discovery and Motions**.  Except upon a substantial showing of

9

>good cause, discovery will be limited to the exchange of relevant documents and three depositions per side. Upon request, either party shall be entitled to receive, prior to the final hearing, information and copies of documents that meet the criteria for discovery. Upon request, Employee shall also be entitled to a true copy of his or her employment records kept in the ordinary course of business (including, without limitation any and all performance evaluations), other than records relating to pre-employment procedures and any reference checks, subject to any condition or limitation imposed by the arbitrator upon a showing of good cause. Any dispute relative to discovery shall be presented to the arbitrator for final and binding resolution. The arbitrator will have the authority to hear and grant motions, including but not limited to motions for summary judgment and summary adjudication.

Dkt. No. 7-1, Ex. A at ECF 6. Although the JAMS Rules have not been presented to the Court, Mr. Garcia's counsel avers that the discovery provision of those rules provides:

>Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

Dkt. No. 13-1 ¶ 4 (quoting JAMS Rule 17(b)). Mr. Garcia argues that the Agreement unfairly conflicts with the JAMS Rules and favors Yoshi by imposing "extreme limits on discovery" and is therefore substantively unconscionable. Dkt. No. 13 at 8.

Limitations on discovery are permissible in arbitration agreements, but courts must balance "desirable simplicity" of discovery limits with "employees' need for discovery 'sufficient to adequately arbitrate their statutory claim[s], including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review.'" *Poublon*, 846 F.3d at 1270 (quoting *Armendariz*, 24 Cal. 4th at 106). "In finding this balance, California courts look to the amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by plaintiffs that the discovery limitations will prevent them from adequately arbitrating their statutory claims." *Id*.

Mr. Garcia argues that the Agreement conflicts with the JAMS Rules by unfairly

1   restricting the arbitrator's ability to expand the scope of discovery. Dkt. No. 13 at 5-6. Although
2   not clearly articulated in his opposition brief, at oral argument, Mr. Garcia asserted that the
3   parties' Agreement is unfair because the JAMS Rules explicitly provide a procedure for the parties
4   to confer to attempt to agree on additional depositions (without expressly requiring any particular
5   standard for additional discovery if the parties agree), and with any disputes to be resolved by the
6   arbitrator upon a showing of "reasonable need." By contrast, Mr. Garcia says that the Agreement
7   provides no opportunity for the parties to confer and agree on additional discovery, and instead
8   requires them to proceed directly to the arbitrator for additional discovery upon a "substantial
9   showing of good cause." Mr. Garcia has not adequately demonstrated or explained how the
10  Agreement's discovery provision precludes the parties from first conferring and agreeing to
11  additional discovery before bringing any such disputes before the arbitrator for resolution. To the
12  extent Mr. Garcia appears to take issue with the Agreement's provision that additional discovery
13  beyond "relevant documents," "three depositions," and his "employment records," may be
14  obtained based on "a substantial showing of good cause," he has not clearly or persuasively
15  explained how that provision imposes a higher, more restrictive, or more stringent standard than
16  under the cited JAMS Rule, which provides that the parties are limited to one deposition, with
17  requests for additional depositions to be determined "based upon the reasonable need for the
18  requested information, the availability of other discovery and the burdensomeness of the request
19  on the opposing Parties and the witness." Dkt. No. 13-1 ¶ 4. Moreover, Mr. Garcia has made no
20  showing that the Agreement's discovery limitations will prevent him from adequately arbitrating
21  his claims. Nor has he presented anything rising to an "insidious pattern" demonstrating that the
22  parties' Agreement was "drawn to provide [defendant] with undue advantages should an
23  employment-related dispute arise," as was the case with the agreement found unconscionable in
24  *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002).
25       Mr. Garcia has not demonstrated that the Agreement's discovery provision is substantively
26  unconscionable. *See, e.g., Poublon*, 846 F.3d at 1271 (discovery limitations not unconscionable
27  where plaintiff made no showing that the limitations precluded her from vindicating her rights and
28  where the discovery limitations allowed her to "obtain all 'relevant documents,' request her

1   personnel records, and take three depositions."); *Sanchez v. Carmax Auto Superstores Cal., LLC*,
2   224 Cal. App. 4th 398, 404 (2014) (discovery limitation not unconscionable where discovery
3   provision required parties to disclose "relevant documents and production of the personnel file
4   upon request," with continuing obligation to supplement disclosures, and allowed 3 depositions,
5   20 interrogatories, and additional discovery on showing of "substantial need"). *Cf. Fitz v. NCR*
6   *Corp.*, 118 Cal. App. 4th 702, 716-18 (2004) (discovery limitation to depositions of 2 individuals
7   and expert witnesses was unconscionable because it did not permit additional discovery unless the
8   parties could "demonstrate that a fair hearing would be *impossible* without additional discovery,"
9   while providing for an amount of discovery "so low that employees may find themselves in a
10  position where not only are they unable to gain access to enough information to prove their claims,
11  but are left with such scant discovery that they are unlikely to be able to demonstrate to the
12  arbitrator a compelling need for more discovery.").

### C. Severability

The parties' Agreement provides: "If any clause or provision of this Agreement is declared void or unenforceable by any tribunal, then such clause or provision shall be modified or, if modification is not possible, stricken to the extent necessary to allow enforcement of this Agreement, and the remaining provisions shall remain in full force and effect." Dkt. No. 7-1, Ex. A at ECF 7. Yoshi argues that any unconscionable terms may be severed from the Agreement, and that the remaining terms properly may be enforced. Mr. Garcia contends that severing unconscionable terms is not appropriate because the Agreement "is tainted with illegality," is "one-sided, and unfair," and would require the Court to impermissibly "reform and re-write much of" the Agreement. Dkt. No. 13 at 9.

California law provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a).  "A court may 'refuse to enforce the entire agreement' only when it is 'permeated' by 'unconscionability.'"  *Poublon*, 846 F.3d at 1272 (quoting *Armendariz*, 24 Cal. 4th at 122).  "Severance is not permitted if the court would be required to augment the contract with additional terms because § 1670.5 does not authorize reformation by augmentation." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005 (9th Cir. 2021).  "[A]n unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." *Id*. at 1005-06.  There is no *per se* rule that "an agreement is necessarily permeated by unconscionability if more than one clause in the agreement is unconscionable or illegal." *Poublon*, 846 F.3d at 1273.  Rather, '[i]n each case, the dispositive question is whether the central purpose of the contract is so tainted with illegality that there is no lawful object of the contract to enforce." *Id*. (quotations and citation omitted); *see also Armendariz*, 24 Cal. 4th at 124 ("Courts are to look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.").  "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz*, 24 Cal. 4th at 124; *see also Poublon*, 846 F.3d at 1272 (same).

      Here, the Court has found that one aspect of the Agreement's "Arbitration Fees and Costs" provision, as well as the unilateral modification/termination provision, are unconscionable.  However, these provisions do not "permeate" the entire Agreement or "taint" it with illegality.  Nor is any reformation, re-writing, or augmentation required.  The unconscionable portion of the attorneys' fees provision may be remedied by severing the following clause from the "Arbitration Fees and Costs" provision:  "The parties shall be responsible for their own attorneys' fee and costs, except as follows[.]"  Additionally, the "Revocation and Modification" provision is easily severable, without disrupting the Agreement's chief objective of submitting Mr. Garcia's claims to arbitration with JAMS before a neutral arbitrator.  *See LaChappelle v. Omni Hotels Mgmt. Corp.*, No. 21-cv-00490-MMC, 2021 WL 3373337, at *5 (N.D. Cal. Aug. 3, 2021) (severing unilateral modification/revocation clause found unconscionable).

**IV.    CONCLUSION**

Based on the foregoing, the Court grants Yoshi's motion to compel arbitration. The present action is stayed pending completion of the arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, — S. Ct. —, No. 22-1218, 2024 WL 2193872 (May 16, 2024).

**IT IS SO ORDERED.**

Dated: May 17, 2024

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge